[Cite as *State v. McAlpin*, 2023-Ohio-4794.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 110811 |
| v. | : | |
| JOSEPH MCALPIN, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 28, 2023

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-17-623243-A

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Kristen Hatcher, Assistant Prosecuting Attorney, *for appellee*.

Timothy Young, Ohio Public Defender, Melissa Jackson, Supervising Attorney, and Renee Severyn and Cassandra Goodpaster, Assistant State Public Defenders, *for appellant*.

EILEEN A. GALLAGHER, J.:

{¶ 1} Defendant-appellant Joseph McAlpin appeals the denial of his motion requesting leave to file a motion for a new trial. For the reasons that follow, we affirm.

## I.    Factual Background and Procedural History

{¶ 2} Joseph McAlpin was sentenced to death in 2019 after a jury found him guilty of aggravated murder stemming from the shooting deaths of Michael Kuznik and Tina Tomola during a robbery of their used-car business.  The Ohio Supreme Court affirmed the convictions and sentence on direct appeal.  *State v. McAlpin*, 169 Ohio St.3d 279, 2022-Ohio-1567, 204 N.E.3d 459, ¶ 301.

{¶ 3} The evidence the state offered against McAlpin at trial included — among other things — coconspirator testimony that McAlpin committed the robbery and entered the business with a gun; forensic evidence that McAlpin's DNA was on Kuznik's body, elsewhere inside the business and in one of the stolen cars taken from the business; cellular-phone analysis showing that McAlpin's cell phone called the business shortly before the murders; surveillance video from nearby businesses that captured McAlpin at and around the crime scene and data provided by Google showing that McAlpin, after the murders, searched the internet for news about the theft and murders and for information about firearms and different calibers, salvaging a 2008 BMW (the year and model of one of the stolen cars) and switching title to a vehicle without the owner's permission.  *See id.* at ¶ 3–37.

{¶ 4} In addition, the state offered location data from the day of the murders that had been provided by Google and several phone companies.  Location-data evidence lies at the heart of this appeal.

{¶ 5} McAlpin maintained a Google account under the email address josephmcalpin87@gmail.com. According to trial testimony, Google stored data generated by McAlpin's use of his cell phone, including data showing — to varying degrees of specificity over time — where his cell phone was physically located when it made or received communications. Google provided investigators with location data associated with McAlpin's account for the day of the murders. The state offered this location data, location data from Sprint associated with McAlpin's phone number and the testimony of FBI special agents to establish the location of McAlpin's phone between 3:05 p.m. and 9:58 p.m. on the day of the murders.

{¶ 6} The Ohio Supreme Court summarized this evidence as follows:

FBI Special Agent Brian Young reviewed cell-phone records to determine whom McAlpin was in touch with on April 14, 2017, between 4:00 and 8:00 p.m. He concluded that during this period, there were several calls between McAlpin's cell phone and a number identified as [Andrew] Keener's (the coconspirator who testified against McAlpin).

The records show that McAlpin's cell phone called Mr. Cars (the used-car business) at 4:09 p.m. * * * At 5:22 p.m., McAlpin's phone was used to make a 39-second call to Keener's phone.

* * *

Between 5:22 and 6:47 p.m., 13 calls between McAlpin's and Keener's phones were made, using cell towers in the general area around Mr. Cars.

* * *

From 7:00 to 7:30 p.m. and again between 8:07 and 8:43 p.m., there was no cellular data for McAlpin's cell phone. However, during that timeframe, Keener's cell phone moved north and then to the west side of Cleveland. Beginning at 8:22 p.m., McAlpin's Google account started generating location information again, showing his phone moving in the same direction as Keener's phone. At 8:43 p.m., Google

location data placed McAlpin's phone at West 48th Street (where one of the stolen cars was later discovered). Around 9:00 p.m., phones belonging to McAlpin, Keener, and Keener's girlfriend were all in the area of West 48th Street.

*Id.* at ¶ 26–33.

{¶ 7} McAlpin waived his right to counsel in July 2018 "and thereafter represented himself at all pretrial hearings, during voir dire, and throughout his trial and sentencing." *Id.* at ¶ 44.

{¶ 8} McAlpin was found guilty on all counts and sentenced to death.

{¶ 9} McAlpin filed a motion for a new trial on April 29, 2019, arguing prosecutorial misconduct, including an argument that the state's DNA expert misrepresented the results of DNA testing. *Id.* at ¶ 78. The trial court held a hearing on the motion and denied the motion. *Id.* at ¶ 80–81.

{¶ 10} On August 20, 2019, McAlpin filed a second pro se motion for a new trial pursuant to Crim.R. 33(A)(6). He argued that "[t]here was Google location information for the date of April 14, 2017 that was not turned over by the State before or during trial." Specifically, McAlpin claimed that there was location data captured between 5:36 p.m. and 8:22 p.m. on the date of the murders and that data records show McAlpin driving from "the north Collinwood area" to his home on East 175th Street between 5:36 p.m. and 9:58 p.m. that day. He argued that this evidence shows that he was not at the crime scene at the time of the murders.

{¶ 11} McAlpin attached an affidavit to his motion, in which he averred that he "had a chance to re-review the Google location history directly from the Google

account" and saw that "there was Google location to be given from [the] time of 5:36pm to 9:58pm without any stoppage of location being recorded."

{¶ 12} McAlpin also attached an exhibit, which he related was "a print out of the Google location time line" for his Google account on April 14, 2017. In relevant part, the printout contains the following summary:



{¶ 13} McAlpin claimed that this Google summary constituted newly discovered evidence and averred that he "was not able to obtain this information due to the state failing to incorporate this exculpatory evidence inside of the discovery."

{¶ 14} McAlpin requested an evidentiary hearing and said that he would subpoena Google for records and testimony at the hearing.

{¶ 15} The state opposed the motion, arguing that (1) McAlpin did not seek leave to file an untimely motion for a new trial, (2) the motion failed to establish that McAlpin was unavoidably prevented from discovering this evidence and (3) the evidence attached to the motion was "unauthenticated, inadmissible, and quite possibly fabricated."

**{¶ 16}** On February 18, 2020, McAlpin filed a pro se motion for leave to file a motion for new trial. He argued that he was unavoidably prevented from discovering the Google location data for his account because that data was not produced by the state in discovery. He stated that he "had no reason to believe that any other Google data, or location information from his Google account[,] existed since the state claim[ed] to have turned over a full copy of his Google account upon discovery request."

**{¶ 17}** On April 27, 2020, McAlpin filed a "supplemental motion for new trial," attaching the same timeline that was attached to his August 2019 motion.

**{¶ 18}** On January 22, 2021, McAlpin filed supplemental exhibits in support of his August 2019 motion for a new trial. Specifically, McAlpin attached an affidavit executed by Brian Bowman, who averred that he is a digital forensic expert employed by Garrett Discovery, Inc. Bowman averred that he reviewed the discovery in the case and also "request[ed] a Google Takeout of the Google account josephmcalpin87@gmail.com" and "analyze[d] the location information within the Takeout."

**{¶ 19}** Bowman averred that the search warrant issued by the state during its investigation "only requested specific information and not a complete copy of the entire Google account josephmcalpin87@gmail.com." After comparing what Google produced to the government to what Google produced pursuant to the defense's later "Google Takeout" request, Bowman stated that Google did not produce several location-history files to the government: (1) a file identified as "locationhistory.json"

and (2) files stored within the "Semantic Location History" for McAlpin's Google account. Bowman averred that the "locationhistory.json" file "contains raw coordinates and timestamps with limited further context." He averred that the Semantic Location History comprises "separate JSON entries for each month" and "record in a more readable format details about locations visited and journeys undertaken, adding Google's interpretation of the raw data." Those files also "contain 'activitySegment' entries reflecting journeys, and 'placeVisit' entries reflect[ing] the places visited."

{¶ 20} Based on his review of the files, Bowman concluded that "[t]he data received from the search warrant return, when compared to the Google Takeout I created of the same user's account, comprises of far less data and is deficient of important location data."

{¶ 21} Bowman further averred that he was able to log into McAlpin's Google account and access the location timeline for April 14, 2017. Bowman verified that the screenshots attached to McAlpin's motions were an accurate depiction of the timeline maintained by Google; he accessed the timeline by logging into the account, navigating to "Maps>Timeline," and entering the date of the incident.

{¶ 22} On May 25, 2021, the trial court summarily denied McAlpin's August 2019 motion for new trial.

{¶ 23} McAlpin appealed,[1] raising the following assignments of error for review:

### First Assignment of Error

The trial court abused its discretion when it failed to consider McAlpin's motion for leave to file a motion for new trial before denying the motion for new trial, in violation of Criminal Rule 33(B) and his right to due process and a fair trial under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Section 16, Article 1 of the Ohio Constitution.

### Second Assignment of Error

The trial court abused its discretion when it failed to grant McAlpin's motion for leave to file a motion for a new trial or hold a hearing when the record demonstrated by clear and convincing evidence that McAlpin was unavoidably prevented from discovering unconstitutionally suppressed evidence in violation of Criminal Rule 33(B) and his right to due process and a fair trial under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Section 16, Article 1 of the Ohio Constitution.

{¶ 24} While this appeal was pending, the Ohio Supreme Court unanimously affirmed McAlpin's convictions and sentence on direct appeal.

## II.  Law and Analysis

{¶ 25} While this is a death-penalty case, this court has jurisdiction to consider McAlpin's appeal of the trial court's denial of his motion for a new trial. *State v. Davis*, 131 Ohio St.3d 1, 2011-Ohio-5028, 959 N.E.2d 516, ¶ 22.

---

[1] McAlpin filed this appeal on September 8, 2021, along with a motion to file a delayed appeal.  This court allowed the delayed appeal.  The appeal was then held in abeyance until the Ohio Supreme Court issued its decision in McAlpin's direct appeal. Extensions were thereafter entered to allow the Supreme Court to transmit the record and to allow the parties sufficient time to complete briefing considering the voluminous record in the case.

{¶ 26} Crim.R. 33(A)(6) allows a trial court to grant a new trial where "new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at trial" and the defendant's substantial rights were materially affected. A defendant whose case was tried to a jury generally must file a motion under Crim.R. 33(A)(6) within 120 days after the jury renders its verdict. *See* Crim.R. 33(B). Where, as here, a defendant misses that window — McAlpin filed his motion 126 days after the jury returned its verdict — the defendant must obtain leave from the trial court to file the motion. *Id.* To obtain leave, a defendant must show "by clear and convincing proof" that they were "unavoidably prevented" from filing a timely motion. *See id.* Ordinarily, this means that a defendant must show that they "had no knowledge of the existence of the ground supporting the motion for a new trial and could not have learned of the existence of that ground within the required time in the exercise of reasonable diligence." *State v. Rodriguez-Baron*, 7th Dist. Mahoning No. 12-MA-44, 2012-Ohio-5360, ¶ 11; *see also State v. Bethel*, 167 Ohio St.3d 362, 2022-Ohio-783, 192 N.E.3d 470, ¶ 21.

{¶ 27} "Clear and convincing evidence" is that "measure or degree of proof" that "produce[s] in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. "It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a

reasonable doubt as in criminal cases. It does not mean clear and unequivocal." (Emphasis deleted.) *Id.* at 477.

{¶ 28} The Ohio Supreme Court has instructed as follows:

When a defendant seeks leave to file a motion for a new trial under Crim.R. 33(B), the trial court may not consider the merits of the proposed motion for a new trial until after it grants the motion for leave. The sole question before the trial court when considering whether to grant leave is whether the defendant has established by clear and convincing proof that he was unavoidably prevented from discovering the evidence on which he seeks to base the motion for a new trial.

(Citations omitted.) *State v. Hatton*, 169 Ohio St.3d 446, 2022-Ohio-3991, 205 N.E.3d 513, ¶ 30.

{¶ 29} The decision whether to grant a motion for leave to file a motion for a new trial is committed to the trial court's discretion and will not be disturbed on appeal absent a showing of an abuse of discretion. *E.g.*, *Hatton* at ¶ 29. A trial court also has discretion to decide whether to hold a hearing on this kind of motion. *E.g.*, *State v. Cannon*, 8th Dist. Cuyahoga No. 103298, 2016-Ohio-3173, ¶ 16. A hearing is only required when "the documents submitted [with the motion] on their face support the defendant's claim that he was unavoidably prevented from timely discovering" the grounds for the motion. *See, e.g.*, *State v. Cowan*, 8th Dist. Cuyahoga No. 108394, 2020-Ohio-666, ¶ 11.

{¶ 30} A court abuses its discretion when it exercises its judgment in an unwarranted way with respect to a matter over which it has discretionary authority. *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 35.

An abuse of discretion implies that the court's attitude is unreasonable, arbitrary or unconscionable. *See, e.g., State v. Musleh*, 8th Dist. Cuyahoga No. 105305, 2017-Ohio-8166, ¶ 36; citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). "An abuse of discretion also occurs when a court "'applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact.'"" *Cleveland v. Wanton*, 8th Dist. Cuyahoga No. 109828, 2021-Ohio-1951, ¶ 8, quoting *S. Euclid v. Datillo*, 2020-Ohio-4999, 160 N.E.3d 813, ¶ 8 (8th Dist.), quoting *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, 892 N.E.2d 454, ¶ 15 (8th Dist.).

{¶ 31} With these standards and instructions in mind, we conclude that the trial court acted within its discretion when it denied McAlpin's motion without a hearing.

## A. First Assignment of Error

{¶ 32} McAlpin's first assignment of error is directed at the trial court's alleged failure to consider his motion for leave to file a new-trial motion before ruling on the substance of the new-trial motion.

{¶ 33} McAlpin filed an untimely motion for new trial. Before the trial court ruled on that motion, McAlpin filed a motion for leave to file a motion for new trial. After the motions were fully briefed, the trial court denied McAlpin's motion for new trial. Its order did not specifically refer to McAlpin's motion for leave. The first question presented by this appeal is how we should construe that denial.

{¶ 34} The state argues that we should construe the trial court's order as denying only McAlpin's original untimely motion for new trial. It argues that we need not — and cannot — reach McAlpin's second assignment of error because the trial court never ruled on McAlpin's motion for leave. Instead, the state says we should affirm the denial of the untimely motion for new trial because McAlpin did not first seek leave to file it. The state's position is that the motion for leave remains pending; presumably, the state would have the trial court rule on the motion for leave upon remand.

{¶ 35} McAlpin argues that it was error for the trial court to purport to deny McAlpin's substantive motion for new trial before first ruling on his procedural motion for leave, but he asserts that — in context — it is clear that the trial court "implicitly overruled" his motion for leave. McAlpin would have us construe the court's order as denying both the motion for leave and the motion for new trial. He asks us to reverse the denial of his motion for new trial because the trial court failed to rule on the motion for leave first. And he asks us to reverse the trial court's denial of his motion for leave because, he says, that denial was an abuse of discretion.

{¶ 36} We agree that, under the unique facts and circumstances of this case, the trial court's order is properly construed as denying McAlpin's motion for leave in addition to his motion for new trial. The trial court took no action on the untimely August 2019 motion before McAlpin filed his motion for leave in February 2020. The motion for leave was, in turn, pending for more than a year before the trial court entered its summary denial; the trial court allowed the parties to complete briefing

on the motions in the interim. Moreover, we take judicial notice that the trial court judge successfully defended against McAlpin's complaint for a writ of mandamus — filed in the Ohio Supreme Court and seeking a ruling on his motion for leave — by arguing that the judge took "judicial action" on the motion when the judge entered his May 2021 summary denial of the new-trial motion. The Ohio Supreme Court granted the judge's motion, dismissing McAlpin's complaint. *See 07/14/2021 Case Announcements*, 2021-Ohio-2307; *State ex rel. McAlpin v. Corrigan*, Judgment Entry, Ohio Supreme Court Case No. 2021-0615 (July 14, 2021) ("Upon consideration of respondent's motion to dismiss, it is ordered by the court that the motion to dismiss is granted.").[2] While the trial court's order referred only to McAlpin's August 2019 motion, it is difficult to see how we could consider the motion for leave to remain pending under these circumstances.

{¶ 37} Considering this unique procedural posture, it is proper to conclude that the trial court — in issuing its summary denial of McAlpin's motion for new trial — intended to and did (albeit inartfully) also deny McAlpin's motion for leave to file a motion for a new trial.

{¶ 38} We, therefore, proceed to consider McAlpin's second assignment of error. If we determine that the trial court's denial of the motion for leave was an

---

[2] "An appellate court is permitted to take judicial notice of publicly accessible online court dockets." *Fipps v. Day*, 8th Dist. Cuyahoga No. 111633, 2022-Ohio-3434, ¶ 2, fn. 1, citing *State ex rel. Everhart v. McIntosh*, 115 Ohio St.3d 195, 2007-Ohio-4798, 874 N.E.2d 516; *State v. Estridge*, 2d Dist. Miami No. 2021-CA-25, 2022-Ohio-208, ¶ 12, fn. 1 ("We note that it is a common practice for appellate courts to take judicial notice of publicly accessible online court dockets.").

abuse of discretion, we will then consider the effect of that error on McAlpin's substantive motion for new trial.

## B. Second Assignment of Error

{¶ 39} McAlpin argues that the trial court erroneously denied McAlpin's motion for leave to file a motion for new trial without a hearing. He contends that his motion and supporting evidence showed that he was unavoidably prevented from discovering the additional Google location-data, and Google's summary of that data, that he was later able to obtain from prison by logging into his Google account.

{¶ 40} After careful consideration, we conclude that McAlpin's motion does not show, by clear and convincing evidence, that he could not have learned of the existence of the additional data within the required time in the exercise of reasonable diligence. *See State v. Rodriguez-Baron*, 7th Dist. Mahoning No. 12-MA-44, 2012-Ohio-5360, ¶ 11; *see also State v. Bethel*, 167 Ohio St.3d 362, 2022-Ohio-783, 192 N.E.3d 470, ¶ 21.

{¶ 41} There are two categories of evidence that McAlpin musters in support of his new-trial motion: (1) raw location data collected by Google that was available to be obtained through a "Google Takeout" request but which was not produced by the state in pretrial discovery and (2) Google's summary of location data from the date of the murders that state that McAlpin's device was "driving" for four hours and twenty-two minutes between 5:36 p.m. and 9:58 p.m.

{¶ 42} As to the former, the defense expert opined that Google maintained "far" more data than was produced by the state in discovery, including "important

location data." The expert does not specifically opine about whether that additional data contradicts the state's theory that McAlpin committed the murders.

{¶ 43} The expert does, however, support the conclusion that there was no suppression of evidence by the state or knowing presentation of false evidence about the data the state obtained. The expert averred that the search warrant issued by the state during its investigation "only requested specific information and not a complete copy of the entire Google account josephmcalpin87@gmail.com." Therefore, he opined, Google did not produce several location-history files to the state such that the files could be turned over to the defense.

{¶ 44} Moreover, the expert's affidavit supports the conclusion that these files were equally available to McAlpin before trial. The expert obtained them simply by requesting them from Google with the user's consent through "Google Takeout." McAlpin argues that he did not have access to the information before or during trial because the state did not produce it and because he was in pretrial detention during discovery with "no access to the internet or his Google account." To the contrary, McAlpin's appointed counsel retained a digital forensic expert for him, as well as a private investigator. *McAlpin*, 169 Ohio St.3d 279, 2022-Ohio-1567, 204 N.E.3d 459, at ¶ 67. McAlpin, obviously knowing the limitations placed on him by his pretrial detention, knowingly waived his appointed counsel and insisted on representing himself. He retained access to his experts. While he complained before trial about having difficulty contacting his experts, the trial court and standby

defense counsel attempted to remedy that situation to assist him. Ultimately, McAlpin insisted on going to trial even in spite of these challenges. *Id.* at ¶ 87.

{¶ 45} With regard to Google's summary of his location data, the evidence attached to McAlpin's motion establishes that he was able to view that summary simply by logging into his Google account. The expert who provided an affidavit in support of McAlpin's motion confirmed that he accessed that timeline summary by logging into the account, navigating to "Maps>Timeline," and entering the date of the incident.

{¶ 46} There is no reason apparent from the evidence as to why McAlpin could not have logged into his own account before trial or requested a complete copy of his account data from Google — or directed his appointed counsel or digital forensic expert to do so on his behalf.

{¶ 47} McAlpin's motion for leave and supporting evidence do not meet his threshold burden of showing, by clear and convincing evidence, that he was unavoidably prevented from discovering the evidence at issue in a timely manner. Therefore, it was not an abuse of discretion for the trial court to deny the motion without holding a hearing.

{¶ 48} We, therefore, overrule McAlpin's second assignment of error. Having concluded that the trial court acted within its discretion by denying McAlpin's motion for leave, we need not reverse and remand the trial court's May 2021 order denying McAlpin's motion for new trial.

## III. Conclusion

{¶ 49} Having overruled McAlpin's assignments of error for the reasons stated above, we affirm the judgment of the trial court.

It is ordered that the appellant bear the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
MICHELLE J. SHEEHAN, J., CONCUR