[Cite as *State v. Allen*, 2024-Ohio-970.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                                    :

     Plaintiff-Appellee,                 :                    No. 112782

v.                                                :

DEMETRIUS ALLEN,                                  :

     Defendant-Appellant.                :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 14, 2024

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-10-540250-B

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Owen Knapp, Assistant Prosecuting Attorney, *for appellee.*

Patituce & Associates, LLC, Joseph C. Patituce, Megan M. Patituce, and Erin M. Branham, *for appellant.*

EILEEN A. GALLAGHER, P.J.:

{¶ 1} Defendant-appellant, Demetrius Allen, appeals the trial court's denial of his motion for leave to file a motion for a new trial. Allen contends that the trial court abused its discretion in denying his motion for leave without a hearing because

he was unavoidably prevented from timely discovering (1) two affidavits related to the testimony of a recanting witness and (2) municipal court records showing another witness allegedly lied at trial regarding the date he performed court-ordered community service. For the reasons that follow, we affirm.

**Factual Background and Procedural History**

{¶ 2} The facts of this case are summarized in this court's decision in Allen's direct appeal, *State v. Allen*, 8th Dist. Cuyahoga No. 97014, 2012-Ohio-1831:

> In the early evening of July 17, 2010, five men were socializing in front of a house located near the intersection of East 123rd Street and Signet Avenue in Cleveland, Ohio. At approximately 8:30 PM, two men approached, one armed with an assault rifle, and unleashed a barrage of gunfire on the assembled men. At the end of the onslaught, two men, Miley Slaughter and Kenneth Green, were dead. Two others, Timothy Sisson and Antwon Weems, were wounded, and a fifth man, Willie Tyson, escaped unharmed.

*Id.* at ¶ 3.

{¶ 3} A Cuyahoga County Grand Jury indicted Allen and Montez Logan on seven counts as a result of the shootings: two counts of aggravated murder with course-of-conduct and one- and three-year firearm specifications, three counts of attempted aggravated murder with one- and three-year firearm specifications and two counts of having weapons while under disability. Allen and Logan pled not guilty to the charges, and the case proceeded to a joint jury trial. At trial, the state presented testimony from over 20 witnesses including two rebuttal witnesses.

The defendants presented testimony from four witnesses including both defendants.

**The State's Eyewitness Testimony**

{¶ 4} Two eyewitnesses, Eric Brown and Antwon Weems, identified Allen as the shooter. Brown testified that, on the evening of July 17, 2010, he was looking out his front window and saw Slaughter, Green, Sisson, Weems and Tyson socializing in front of his house. A short time later, Brown heard gunfire, looked out the window and saw Allen discharging a military-style automatic gun at the men assembled, who attempted to flee. Brown testified that Slaughter was shot and fell on his back in the driveway and that Green was shot and was later found dead in Brown's backyard. Brown testified that, as Allen was shooting, Logan was standing close to Allen and was "hyped up," but did not have a weapon.

{¶ 5} Brown stated that he had an unobstructed view of Allen and Logan from his front window. Although, initially, Brown did not want to be involved in the police investigation, he later gave statements to police and identified Allen and Logan in a photo array. Brown also identified both men in the courtroom. Brown testified that he was "sure" Allen and Logan were the men he saw involved in the shooting.

{¶ 6} Weems testified that after the men heard gunfire, they started running. Weems was struck in his right foot. He hopped across the grass towards the driveway and saw Slaughter fall to the ground. Weems stated that as he attempted to help Slaughter, he could see sparks from gunfire. Weems testified

that he turned around and saw the faces of the assailants.  He saw a man (later identified as Allen) with "a big gun."  He stated that the other man (later identified as Logan) did not appear to have a weapon.

{¶ 7} Weems indicated that he "didn't know who they was right off" but that he "recognized their face[s]" and that he never "forgot a face."  He testified that while he was in the hospital for surgery on his foot, Christopher Perkins visited him.  Although Perkins was not present during the incident, Weems indicated that Perkins told him the names of the two men who were involved the shooting.  Weems stated that after Perkins "came and told me their names," it "hit me that's who it was."  Weems stated that he had gone to school with Logan and knew the mother of Allen's child.

{¶ 8} Weems did not initially cooperate with police.  He stated that when he was first questioned by police, he "gave them a story" that was "a complete lie" because he "believed [in] another kind of justice at the time."  On May 5 and 6, 2011, after Weems was arrested and charged with several unrelated crimes, Weems agreed to cooperate and gave additional statements to the police.  Weems identified Allen and Logan as the assailants in a photo array and later in the courtroom during trial.  Weems testified that he was "[p]ositive" Allen and Logan were the men involved in the shooting.  Weems stated that neither the police nor the assistant prosecuting attorney promised him anything in exchange for his cooperation.

{¶ 9} Tyson testified that he did not see "anyone that was a shooter," did not know how many shooters there were and did not see Allen or Logan on the day of the incident. Sisson testified that he just saw "a glimpse of a light-skin male holding a rifle" and could "not identify [the shooter] personally." Detectives testified that, although Weems told them Perkins had given him Allen and Logan's names, they did not attempt to locate or interview Perkins.

**Allen's Defense and the State's Rebuttal**

{¶ 10} Allen, Logan, Deandre Allen (Allen's brother) ("Deandre") and Dapolo Green (Deandre's friend and Kenneth Green's cousin) ("Dapolo") testified that on the day of the shooting, Allen and Logan picked Deandre and Dapolo up at 118th Street and Kinsman Road, took them to a shoe store located at the intersection of Lee Road and Harvard Avenue and then drove Deandre and Dapolo back to Deandre's home in Garfield Heights. Allen, Logan and Deandre — witnesses for the defense — testified that this trip took place between approximately 6:30 p.m. and 8:30 p.m., such that Allen and Logan would not have had time to travel to East 123rd Street and Signet Avenue, the scene of the shooting, at the time it occurred.

{¶ 11} Dapolo — a rebuttal witness for the state — testified that on July 17, 2010, he had performed court-ordered community service from 8:00 a.m. to 3:00 p.m. before meeting up with Deandre.[1] He stated that the trip to the shoe store

---

[1] Deandre also testified regarding Dapolo's community service. He testified:

Q. * * * How long had you been with Dapolo on Saturday, July 17th?

occurred earlier in the day and that he and Deandre were dropped off at Deandre's house at approximately 7:00 p.m.

{¶ 12} The jury returned a guilty verdict on all counts. In June 2011, Allen and Logan were each sentenced to an aggregate prison term of 46 years to life. This court affirmed Allen's convictions on direct appeal. *Allen*, 8th Dist. Cuyahoga No. 97014, 2012-Ohio-1831. Allen then appealed to the Ohio Supreme Court. The Ohio Supreme Court declined to accept jurisdiction. *State v. Allen*, 132 Ohio St.3d 1516, 2012-Ohio-4021, 974 N.E.2d 113. Allen also filed an application to reopen his appeal pursuant to App.R. 26(B), which was denied. *State v. Allen*, 8th Dist. Cuyahoga No. 97014, 2012-Ohio-5709.

{¶ 13} On October 17, 2022, more than eleven years after his convictions, Allen filed a motion for leave to file a motion for a new trial pursuant to Crim.R. 33(A)(6) and (B) ("motion for leave") and requested a hearing on the motion. Allen claimed that, in March 2020, he had retained counsel to represent him on postconviction matters and, "[i]n pursuit of proving his innocence," had also retained a private investigator, Tom Pavlish. He further claimed that, as part of

---

A. That day, well, he was with me all that week but that day we were together all day.

Q. When you say he had been with you all that week, what do you mean?

A. He had community service to do in Garfield so he was at my house the whole week.

his investigation, Pavlish contacted Perkins and obtained an affidavit from Perkins. The affidavit, dated November 26, 2020, stated:

> I, Chris Perkins, swear that I voluntarily provided this statement to Tom Pavlish.
> I was not present on July 17, 2010 when Miley Slaughter, Kenneth Green and Antwon Weems were shot.
> I never went to Metro Hospital to visit Antwon.
> I never told him that Demetrius Allen or Montez Logan were the shooters.
> I have no idea why he is stating that I did.
> No one ever interviewed me about this incident.

{¶ 14} Allen asserted that after obtaining Perkins' affidavit, "it became evident that Weems would need to be interviewed based on Perkins' statements." He claimed that Pavlish then contacted Weems and obtained an affidavit from Weems. The affidavit, dated November 5, 2021, stated:

> I, Anton Weems, swear that I voluntarily provided this statement to Tom Pavlish.
> I knew Montez Logan & Demetrius Allen from the neighborhood. I went to school with Montez. I never had problems with neither men [sic].
> I did not see who shot any of us on July 17, 2010. Chris Perkins NEVER saw me in the hospital.
> I only identified Tez & DJ because the prosecutor told me that I would get probation for [the] case I was locked up on.
> They came to interview me before this. I only decided to lie for me [sic] freedom.
> All the information I gave the police was not first hand [sic] knowledge or what I saw with my [own] eyes.
> I deeply apologize for lying. I was just trying to get home.

(Emphasis sic.)

{¶ 15} Allen argued that he was "unavoidably prevented" from timely discovering that Perkins never spoke to Weems at the hospital and Weems never

saw the shooter(s) the night of the incident because (1) Perkins did not testify at trial and (2) he had no other way to prove Weems had "lied" at trial until Pavlish obtained Perkins' affidavit. Allen asserted that Pavlish had been unable to promptly contact Weems after obtaining Perkins' affidavit because Weems was "on the run" from June 2020 to February 2021 and then faced new criminal charges, which were not resolved until September 7, 2021. Allen asserted that, at the time he executed his affidavit, Weems was incarcerated and had "nothing to gain by disclosing that he lied."

{¶ 16} Copies of the affidavits Pavlish obtained from Perkins and Weems were attached to Allen's motion for leave. No other evidence was submitted in support of the motion.[2] The state opposed the motion for leave.

{¶ 17} On April 27, 2023, Allen filed a "supplemental motion for leave to file motion for new trial," providing "additional evidence in support of his motion for leave." Allen claimed that he had discovered new evidence establishing that Dapolo had "lied" when he testified that he had performed community service on July 17, 2010. Allen claimed that records obtained from the Garfield Heights Municipal Court showed that Dapolo actually completed his community service on August 7, 2010, not July 17, 2010, and that "[e]vidence establishing that [Dapolo] was lying about his community services was material and would have been relevant for defense counsel during cross-examination." Allen argued that

---

[2] Allen did not provide an affidavit from himself or Pavlish supporting his assertions regarding the timing of, and circumstances surrounding, the acquisition of Perkins' and Weems' affidavits.

he should be permitted to file a motion for a new trial based on this evidence (in addition to the Perkins and Weems affidavits) because he had been "unaware of the fact that evidence existed establishing [Dapolo's] deceptions," the state did not produce this evidence prior to Allen's convictions and "[d]efendants are 'not required to show that [they] could not have discovered suppressed evidence by exercising reasonable diligence,'" quoting *State v. Bethel*, 167 Ohio St.3d 362, 2022-Ohio-783, 192 N.E.3d 470, ¶ 24-25.  In support of his motion, Allen attached copies of (1) a judgment entry in Garfield Heights Municipal Court Case Nos. TRD 100379 ("TRD 100379") and CRB 1001331 ("CRB 1001331"), dated June 23, 2010, sentencing Dapolo to a 30-day suspended jail sentence and three months of active community-control sanctions after he pled no contest to one count of pedestrian in the road (in TRD 100379) and one count of possession of marijuana (in CRB 1001331),[3] (2) a notice of community service in TRD 100379, dated July 26, 2010, indicating that Dapolo had been ordered to perform eight hours of community service on August 7, 2010, at 9:00 a.m. and (3) a journal entry in TRD 100379, dated August 9, 2010, terminating Dapolo's probation and indicating that "Defendant has completed community service with the Garfield Heights Police Department."  The date on which Dapolo completed community

---

[3] In his supplemental motion for leave, Allen asserted that, as part of its June 23, 2010 order, the Garfield Heights Municipal Court ordered Dapolo to serve eight hours of community service.  However, the copy of the order that is in the record is of poor quality and that portion of the order is illegible.  The copies of the documents Allen attached to his motion were not certified copies.

service was not identified in the entry.  No other evidence was submitted in support of the supplemental motion for leave.

{¶ 18} On May 1, 2023, the trial court summarily denied Allen's motion for leave to file a motion for a new trial.

{¶ 19} Allen appealed, raising the following sole assignment of error for review:

> The trial court abused its discretion in denying Mr. Allen's Motion for Leave to File a Motion for New Trial.

## Law and Analysis

### Motion for Leave to File Motion for a New Trial under Crim.R. 33

{¶ 20} Crim.R. 33(A)(6) allows a trial court to grant a new trial where "new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial" and the defendant's "substantial rights" are "materially" "affect[ed]."  A defendant whose case was tried to a jury must file a motion for a new trial based on newly discovered evidence within 120 days after the jury's verdict; otherwise, leave of court to file a motion for new trial must be sought and granted.  To obtain leave to file an untimely motion for a new trial, the defendant must show "by clear and convincing proof" that he or she was "unavoidably prevented" from discovering the evidence and filing a timely motion for a new trial within the 120-day period.  Crim.R. 33(B).

{¶ 21} "Clear and convincing" evidence is that "measure or degree of proof" that "produce[s] in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. "It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." (Emphasis deleted.) *Id.* at 477.

{¶ 22} When a defendant seeks leave to file a motion for a new trial under Crim.R. 33(B), the merits of the new-trial claim are not before the trial court unless, and until, it grants the motion for leave and the trial court, therefore, may not consider the merits of a proposed motion for a new trial unless, and until, it grants the motion for leave. *State v. Hatton*, 169 Ohio St.3d 446, 2022-Ohio-3991, 205 N.E.3d 513, ¶ 30, 33; *Bethel*, 167 Ohio St.3d 362, 2022-Ohio-783, 192 N.E.3d 470, at ¶ 41. The sole question before the trial court when considering whether to grant a motion for leave based on newly discovered evidence is whether the defendant has established by clear and convincing proof that he or she was unavoidably prevented from discovering the evidence at issue within the time frame provided, e.g., within 120 days of the jury's verdict. *Hatton* at ¶ 30; *State v. Hale*, 8th Dist. Cuyahoga No. 112163, 2023-Ohio-3894, ¶ 20. A defendant's "mere allegation" that he or she was unavoidably prevented from discovering the evidence he or she seeks to introduce to support a new trial does not meet that burden. *State v. McFarland*, 8th Dist. Cuyahoga No. 111390, 2022-

Ohio-4638, ¶ 17; *State v. Hubbard*, 8th Dist. Cuyahoga No. 108853, 2020-Ohio-2726, ¶ 29; *State v. Cowan*, 8th Dist. Cuyahoga No. 108394, 2020-Ohio-666, ¶ 10.

{¶ 23} A defendant is entitled to a hearing on a motion for leave to file an untimely motion for a new trial only if the defendant submits documents that "on their face" support his or her claim that he or she was unavoidably prevented from timely discovering the grounds for the motion. *See, e.g., State v. McAlpin*, 8th Dist. Cuyahoga No. 110811, 2023-Ohio-4794, ¶ 29; *McFarland* at ¶ 28; *State v. Dues*, 8th Dist. Cuyahoga No. 105388, 2017-Ohio-6983, ¶ 12; *State v. Ambartsoumov*, 10th Dist. Franklin Nos. 12AP-877 and 12AP-878, 2013-Ohio-3011, ¶ 13 (motion for leave to file motion for new trial may be summarily denied where neither the motion nor its supporting affidavits "'embody prima facie evidence of unavoidable delay'"), quoting *State v. Peals*, 6th Dist. Lucas No. L-10-1035, 2010-Ohio-5893, ¶ 22; *State v. Martin*, 8th Dist. Cuyahoga No. 110549, 2022-Ohio-1494, ¶ 36-37 (defendant who submitted evidence that on its face showed he was unavoidably prevented from discovering and presenting evidence sooner was entitled to a hearing on motion for leave to file motion for new trial).

**Standard of Review**

{¶ 24} We review both a trial court's decision on a motion for leave to file an untimely motion for a new trial and a trial court's decision whether to hold an evidentiary hearing on a motion for leave for abuse of discretion. *Hatton* at ¶ 29; *McAlpin* at ¶ 29, citing *State v. Cannon*, 8th Dist. Cuyahoga No. 103298, 2016-Ohio-3173, ¶ 16; *Hale* at ¶ 17.

{¶ 25} A court abuses its discretion "when a legal rule entrusts a decision to a judge's discretion and the judge's exercise of that discretion is outside of the legally permissible range of choices." *State v. Hackett*, 164 Ohio St.3d 74, 2020-Ohio-6699, 172 N.E.3d 75, ¶ 19; *see also Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 35 (describing the "common understanding of what constitutes an abuse of discretion" as "a court exercising its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority"). A decision is an abuse of discretion when it is unreasonable, arbitrary or unconscionable. *See, e.g., State v. Brusiter*, 8th Dist. Cuyahoga No. 112410, 2023-Ohio-3794, ¶ 10; *McAlpin* at ¶ 30; *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). A decision is "unreasonable" "'if there is no sound reasoning process that would support that decision.'" *State v. Ford*, 158 Ohio St.3d 139, 2019-Ohio-4539, 140 N.E.3d 616, ¶ 106, quoting *AAAA Ents. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). An "arbitrary" decision is "made 'without consideration of or regard for facts [or] circumstances.'" *State v. Beasley*, 152 Ohio St.3d 470, 2018-Ohio-16, 97 N.E.3d 474, ¶ 12, quoting *Black's Law Dictionary* 125 (10th Ed.2014). When applying an abuse-of-discretion standard, this court may not substitute its judgment for that of the trial court. *McFarland* at ¶ 21.

{¶ 26} A defendant may make the required showing that he or she was "unavoidably prevented" from filing a timely motion for a new trial based on new evidence by demonstrating that he or she was previously unaware of the evidence

on which the motion relies and could not have discovered it within the required time by exercising reasonable diligence. *State v. Johnson*, Slip Opinion No. 2024-Ohio-134, ¶ 18; *Bethel*, 167 Ohio St.3d 362, 2022-Ohio-783, 192 N.E.3d 470, at ¶ 21; *McFarland* at ¶ 16.

{¶ 27} A defendant may also make the required showing by establishing that the prosecution suppressed the evidence at issue. *Bethel* at ¶ 25 ("[W]hen a defendant seeks to assert a *Brady* claim in an untimely or successive petition for postconviction relief, the defendant satisfies the 'unavoidably prevented' requirement contained in R.C. 2953.23(A)(1)(a) by establishing that the prosecution suppressed the evidence on which the defendant relies."); *Johnson* at ¶ 16, 18 (a petitioner who files an untimely or successive petition for postconviction relief may show that he or she was unavoidably prevented from discovering the evidence on which the petition relies "by establishing a violation under [*Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)]"); *State v. McNeal*, 169 Ohio St.3d 47, 2022-Ohio-2703, 201 N.E.3d 861, ¶ 17 ("[A] defendant may satisfy the 'unavoidably prevented' requirement contained in Crim.R. 33(B) by establishing that the prosecution suppressed the evidence on which the defendant would rely in seeking a new trial.").

{¶ 28} Allen has not claimed a *Brady* violation or that the state otherwise suppressed the evidence at issue. Accordingly, to warrant a hearing on his motion for leave, he needed to submit documents with his motion for leave that, on their face, supported his claim that he was previously unaware of the evidence at issue

and could not have discovered it within the required time by exercising reasonable diligence. After careful consideration of the record before us, we cannot say that the trial court abused its discretion in concluding that Allen did not meet his burden here.

### Affidavits from Perkins and Weems

{¶ 29} With respect to the Perkins and Weems affidavits, Allen argues that (1) because Perkins did not testify at trial, Allen did not become aware of Perkins' statement until Perkins spoke with Pavlish, (2) it was Pavlish's conversation with Perkins that led Pavlish to speak with Weems and (3) Allen had "absolutely no control over when individuals were willing to provide affidavits" and could only "deal with witnesses as they are available to him" once they "have decided to provide affidavits," he established, by clear and convincing evidence, that he was "unavoidably prevented from discovering the affidavits of Mr. Perkins and Mr. Weems within the pr[e]scribed 120-day period." We disagree.

{¶ 30} In *Johnson*, Slip Opinion No. 2024-Ohio-134, the Ohio Supreme Court considered what evidence a petitioner needs in order to establish, for purposes of an untimely or successive petition for postconviction relief under R.C. 2953.23(A)(1), that he or she was "unavoidably prevented" from discovering facts involving a recanting witness. The court rejected the argument that an affidavit from a recanting witness, dated after the statutory deadline for filing a timely petition, was, in and of itself, sufficient to establish that a defendant was

unavoidably prevented from timely submitting the evidence. The court explained:

> R.C. 2953.23(A)(1)(a) requires a petitioner to show that he was "unavoidably prevented" — not merely "prevented" — from discovering the facts on which he would rely. (Emphasis added.) "Unavoidable" means "not avoidable" or "inevitable." *Merriam-Webster's Collegiate Dictionary* 1360 (11th Ed.2003). And something is "inevitable" if it is "incapable of being avoided or evaded." *Id.* at 638. Keeping in mind that R.C. 2953.23 means what it says, a petitioner filing an untimely postconviction petition must show that any delay in discovering the facts undergirding the petition was "incapable of being avoided or evaded," *Merriam-Webster's Collegiate Dictionary* at 638.

> The light that an affidavit's date sheds on that issue is dim, at best. A date merely reveals when the affidavit was executed or provided, not when the testimony it contains became available. Without an explanation of how the recantation was discovered, the information essential to the R.C. 2953.23 inquiry remains cloaked in darkness. It is this type of information that bears on the petitioner's ability to avoid delay in discovering recanted testimony. * * *

> Accepting an affidavit's date as prima facie evidence satisfying the strictures of R.C. 2953.23(A)(1)(a) would effectively eliminate the word "unavoidably" from the statute. Thus, we hold that R.C. 2953.23(A)(1)(a) requires a petitioner to submit evidence of specific facts beyond the supporting affidavit's date to explain why the petitioner was unable to timely obtain an affidavit from the recanting witness.

*Johnson* at ¶ 24-25, 27.

{¶ 31} The court also rejected the argument that questions concerning the reasons for a recanting witness affidavit, the timing of a recanting witness affidavit and efforts to discover a recantation must be explored at a hearing:

> [T]he petitioner bears the burden of proving that he was unavoidably prevented from discovering the evidence on which he must rely * * *. Therefore, it is the petitioner's duty to present sufficient evidence to carry that burden at the time he files the petition. And there is no

> practical reason why a hearing might be necessary for the petitioner to satisfy this burden. If testimony can be elicited at a hearing, it can be attested to in an affidavit. We therefore reject Johnson's argument that regardless of the circumstances, a hearing is required whenever a petitioner produces an affidavit from a witness recanting the witness's testimony.

*Johnson* at ¶ 26.

{¶ 32} In *Johnson*, the only evidence the petitioner, Johnson, had submitted in support of his postconviction petition was an affidavit from the recanting witness, the victim. *Id*. at ¶ 28. In his affidavit, the victim detailed his "doubts" about his trial testimony, his limited recollection of his assailant and his concern that he had improperly identified Johnson as his attacker. *Id*. at ¶ 7. He also explained that he had "felt pressured by [a police detective] to * * * testify against [Johnson] even though [he] wasn't sure [Johnson] was the person who committed these crimes against [him]." *Id*. Although Johnson asserted in his petition, "in conclusory fashion," that the information in the affidavit "was not available to [him] until this time" and "was not discoverable by him until [the recanting witness] presented it," the affidavit did not state this. *Id*. at ¶ 29. The affidavit contained no information about when or how Johnson learned of the victim's misgivings regarding his identification of Johnson, who contacted whom, when such contact occurred or any other information "about whether Johnson had been prevented, unavoidably or otherwise, from timely discovering [the victim's] uncertainties about his identification of Johnson." *Id*. at ¶ 28-29. Further, the victim claimed in his affidavit that he had "spent the past seven years

thinking about [his] testimony" and that he had daily "felt an incredible weight on [his] shoulders" because he believed he did not identify the right person. *Id.* at ¶ 29. Under such circumstances, the court held that Johnson "did not carry his burden" of showing that he was "unavoidably prevented" from discovering the recantation within the statutory deadline. *Id.* at ¶ 8-30, 35.[4]

{¶ 33} Because "'the "unavoidably prevented" requirement in Crim.R. 33(B) mirrors the "unavoidably prevented" requirement in R.C. 2953.23(A)(1),'" we must apply the same analysis when determining whether Allen met his burden here. *Bethel*, 167 Ohio St.3d 362, 2022-Ohio-783, 192 N.E.3d 470, at ¶ 59, quoting *State v. Barnes*, 5th Dist. Muskingum No. CT2017-0092, 2018-Ohio-1585, ¶ 28; *see also Johnson* at ¶ 16, fn. 3.

{¶ 34} In this case, the only evidence Allen presented in support of his claim that he was unavoidably prevented from discovering Weems' recantation were the affidavits from Perkins and Weems. Allen argues that he was "prevented from obtaining [the affidavits] unless and until the individuals were willing to provide those affidavits." However, there is no evidence in the record detailing Allen's efforts, if any, to timely obtain an affidavit from Perkins or Weems or establishing why any such efforts would have been unavailing.

---

[4] The court also held that Johnson had failed to establish that he would not have been convicted but for constitutional error at trial under R.C. 2953.23(A)(1)(b). *Id.* at ¶ 31-35.

{¶ 35} In his motion for leave Allen asserts (unsupported by affidavit) that the path to his discovery of Weems' recantation began when he hired a private investigator in 2020. Allen further asserts that the private investigator located Perkins and obtained an affidavit from him in November 2020. No information is provided in Perkins' affidavit as to how or when the private investigator located Perkins. Allen claims that it was only after obtaining the affidavit from Perkins — in which Perkins disclaimed any role in Weems' identification of Allen and Logan — that he (or his private investigator) could approach Weems, but he offers no explanation as to why he could not have reached out to Perkins or Weems sooner. No information is provided in Weems' affidavit as to what led him to execute an affidavit in November 2021 recanting his trial testimony, i.e., whether it was Perkins' statement or something else. Perkins states in his affidavit that no one ever interviewed him regarding the incident.

{¶ 36} Allen and his defense attorneys were well aware of the existence of Perkins and his role in the case at the time of trial — if not before. Multiple witnesses, including Weems and police detectives, testified regarding the fact Perkins had allegedly told Weems the names of the men involved in the shooting. The record reflects also that a private investigator assisted in Allen's defense prior to trial.[5]

---

[5] At oral argument, Allen's counsel stated that Allen did not have a private investigator assisting the defense at trial. However, the trial transcript reflects otherwise. *See* tr. at 178-179 (indicating that the state had received "from defense counsel the audio tape from their investigator" the state had requested). A private investigator was also identified as a potential trial witness for the defense in Allen's discovery responses.

**{¶ 37}** In this case, all we have are Allen's conclusory assertions (unsupported by affidavit) that he was unavoidably prevented from discovering Perkins' statement and Weems' recantation within the prescribed time frame. However, "'[m]ere conclusory allegations do not prove that the defendant was unavoidably prevented from discovering the evidence he seeks to introduce as support for a new trial.'" *McFarland*, 2022-Ohio-4638, at ¶ 28, quoting *State v. Cashin*, 10th Dist. Franklin No. 17AP-338, 2017-Ohio-9289, ¶ 17, 20-23 (trial court did not err in denying defendant's motion for leave to file motion for new trial based on evidence contained in new witness affidavits where defendant "failed to produce any evidence regarding his efforts to obtain the witnesses' affidavits"; defendant's statement that he did "everything possible" to obtain the witnesses' testimony was a "conclusory allegation devoid of the detail necessary to determine whether [the defendant] exercised reasonable diligence").

**{¶ 38}** Allen has not shown that the trial court abused its discretion in denying his motion for leave based on Perkins' and Weems' affidavits.

### Garfield Heights Municipal Court Records Relating to Dapolo's Community Service

**{¶ 39}** With respect to the municipal court records, Allen claims, citing *Bethel*, 167 Ohio St.3d 362, 2022-Ohio-783, 192 N.E.3d 470, at ¶ 24-25, that he was "not under an obligation to 'scavenge' for material" and was "not required to prove he could not have obtained the evidence through reasonable diligence." He asserts that he was "entitled to rely upon the prosecution's production of

evidence" and that because the state "did not disclose the documentation related to [Dapolo's] term of community service prior to [Allen's] trial," it was "reasonable to assume" that the state was unaware of it and "reasonable to conclude" that Allen was "similarly unaware." Allen further asserts that because he "did not become aware of this evidence until approximately a decade after his conviction," he was "unavoidably prevented from providing this evidence to the trial court within 120 days of his conviction."

{¶ 40} *Bethel*, however, involved an alleged *Brady* violation. In *Bethel*, the defendant filed an untimely, successive petition for postconviction relief under R.C. 2953.23 and a motion for leave to file a motion for a new trial under Crim.R. 33(B) based on the state's alleged suppression of an investigation report. *Bethel* at ¶ 24-25. The Ohio Supreme Court held that "when a defendant seeks to assert a *Brady* claim in an untimely or successive petition for postconviction relief, the defendant satisfies the 'unavoidably prevented' requirement contained in R.C. 2953.23(A)(1)(a) by establishing that the prosecution suppressed the evidence on which the defendant relies." *Id.* at ¶ 25. The court in *Bethel* did not state that criminal defendants have no "obligation to 'scavenge' for material," as Allen claims. The court stated that "criminal defendants have no duty to 'scavenge for *hints of undisclosed Brady material.*'" (Emphasis added.) *Id.* at ¶ 24, quoting *Banks v. Dretke*, 540 U.S. 668, 695, 124 S.Ct. 1256, 157 L.Ed.2d 1166 (2004). The court further explained:

It is well settled that a defendant is entitled to rely on the prosecution's duty to produce evidence that is favorable to the defense. *See* [*Kyles v. Whitley*, 514 U.S. 419, 432-433, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)]. A defendant seeking to assert a *Brady* claim therefore is not required to show that he could not have discovered suppressed evidence by exercising reasonable diligence. *See* [*Strickler v. Greene*, 527 U.S. 263, 282-285, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)]. We hold that when a defendant seeks to assert a Brady claim in an untimely or successive petition for postconviction relief, the defendant satisfies the "unavoidably prevented" requirement contained in R.C. 2953.23(A)(1)(a) by establishing that the prosecution suppressed the evidence on which the defendant relies.

*Bethel* at ¶ 25.

{¶ 41} In *Bethel*, the court held that the documents the defendant submitted with his successive postconviction petition "establish[ed] a prima facie claim that the prosecution suppressed [information in the investigation report]" in violation of *Brady*, thereby satisfying the "unavoidably prevented" requirement in R.C. 2953.23(A)(1)(a).[6] *Id.* at ¶ 25, 30, 59.

{¶ 42} Although criminal defendants have no duty to "scavenge" for "undisclosed *Brady* material," that is not the situation here. As stated above, Allen has not claimed that he was unavoidably prevented from discovering the information in the municipal court records due to the state's suppression of

---

[6] In *Bethel*, the court ultimately held that the trial court had properly dismissed the defendant's successive postconviction petition for lack of subject-matter jurisdiction after concluding that the defendant had failed to meet his burden under R.C. 2953.23(A)(1)(b) to establish that the allegedly suppressed information was material. *Id.* at ¶ 60. The court held that it was unnecessary to remand the defendant's motion for leave to file a motion for a new trial under Crim.R. 33, because, even assuming the defendant would be entitled to a hearing on his motion for a new trial, the hearing would be an exercise in futility given that the court had already concluded (in determining that the defendant had failed to meet his burden under R.C. 2953.23(A)(1)(b)) that the defendant's *Brady* claim, which was the basis of the motion for a new trial, lacked merit. *Id.* at ¶ 59.

evidence. The municipal court records were public records. It was well known to Allen that Dapolo claimed to have performed court-ordered community service on July 17, 2010. Both Dapolo and Allen's brother, Deandre, testified at trial regarding Dapolo's court-ordered community service. Allen provided no affidavits or other evidence detailing how he learned of the existence of the municipal court records and why he, his attorneys or his private investigator could not have discovered them sooner. Evidence is not undiscoverable simply because no one looked for it. *See, e.g., McFarland*, 2022-Ohio-4638, at ¶ 25 ("'A defendant cannot claim that evidence was undiscoverable merely because the defendant or his defense counsel made no effort to obtain the evidence sooner.'"), quoting *Hubbard*, 2020-Ohio-2726, at ¶ 56; *Hale*, 2023-Ohio-3894, at ¶ 31 (same); *State v. Collins*, 8th Dist. Cuyahoga No. 108486, 2020-Ohio-918, ¶ 45 ("It is the duty of the criminal defendant and his trial counsel to make a serious effort, on their own, to discover potential, favorable evidence. * * * Claims that evidence was undiscoverable simply because the defense did not take the necessary steps earlier to obtain the evidence do not satisfy the requisite standard [under Crim.R. 33(B)].").

{¶ 43} Allen has not shown that the trial court abused its discretion in denying his motion for leave based on the municipal court records.

**Conclusion**

{¶ 44} Crim.R. 33(B) puts the onus on the defendant to show that he or she was unavoidably prevented from timely discovering the new evidence on

which a motion for a new trial is based. The only evidence Allen submitted in support of his motion for leave to file a motion for a new trial were Perkins' and Weems' affidavits and the municipal court records. These documents are silent on the issue of whether Allen was unavoidably prevented from discovering this evidence within 120 days of the jury's verdict. Because Allen failed to present evidence that, on its face, could support his claim that he was unavoidably prevented from timely discovering Perkins' statement, Weems' recantation and/or the municipal court records, the trial court did not abuse its discretion in denying his motion for leave to file a motion for a new trial without a hearing.

{¶ 45} Allen's assignment of error is overruled.

{¶ 46} Judgment affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds that there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, PRESIDING JUDGE

ANITA LASTER MAYS, J., and
FRANK DANIEL CELEBREZZE, III, J., CONCUR