[Cite as *State v. McFarland*, 2022-Ohio-4638.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 111390 |
| v. | : | |
| SHELIA A. MCFARLAND, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 22, 2022

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-16-604052-B

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Daniel T. Van, Assistant Prosecuting Attorney, *for appellee.*

Valore & Gordillo LLP and Dean M. Valore, *for appellant.*

EILEEN T. GALLAGHER, J.:

{¶ 1} Defendant-appellant, Sheila McFarland ("McFarland"), appeals the denial of her motion for leave to file a motion for new trial and claims the following error:

The trial court committed reversible error and prejudiced appellant when it denied appellant's motion for leave to file motion for new trial.

{¶ 2} We affirm the trial court's judgment.

## I. Facts and Procedural History

{¶ 3} In March 2016, McFarland was charged with multiple offenses, including two counts of aggravated murder in connection with the shooting death of Robert Williams ("Williams") in November 2015. A jury found McFarland guilty of all ten counts in the indictment, and the court sentenced her to an aggregate prison term of life without the possibility of parole. The court also imposed a fine of $20,000. *See State v. McFarland*, 8th Dist. Cuyahoga No. 105570, 2018-Ohio-2067.

{¶ 4} At trial, the prosecution presented testimony indicating that Williams was living in the Indian Hills Apartments in Euclid, Ohio with his girlfriend, Korri Henderson ("Henderson") at the time of his death. Two months earlier, in September 2015, Euclid narcotics detectives conducted a series of controlled drug buys from Williams in the parking lots surrounding the Indian Hills Apartments. As a result of the buys, the narcotics detectives obtained and executed a search warrant for Williams's apartment where they discovered crack cocaine. Both Williams and Henderson were arrested and subsequently agreed to become confidential informants to assist Euclid detectives in apprehending their supplier, Eddie Brownlee ("Brownlee"), and his girlfriend, McFarland.

{¶ 5} Williams conducted three controlled drug buys from Brownlee and McFarland. Brownlee and McFarland were arrested during the third buy on October 22, 2015, and they were both charged with drug offenses. McFarland was released from jail on October 23, 2015, but Brownlee remained in jail.

{¶ 6} While incarcerated on the pending drug charges, Brownlee made several recorded phone calls to McFarland, who was using Brownlee's cell phone. During one of the calls, Brownlee told McFarland, who was then in the presence of a mutual friend, codefendant Ryan Motley ("Motley"), that he suspected Williams was an informant, who had "snitched" on him and set up the controlled buys. Following the call, McFarland and Motley went to a hotel room, where Brownlee and McFarland had been staying, and removed drugs to avoid further charges. Motley also recovered a firearm from under a mattress and removed it from the room. When Motley informed Brownlee that he had retrieved the gun, Brownlee told Motley to "Get Rob. Get those mother***ckers." *McFarland*, 8th Dist. Cuyahoga No. 105570, 2018-Ohio-2067, ¶ 6. Brownlee also told Motley, "I need you to handle this." *Id.* McFarland replied that she and Motley were "about to do that one thing now." *Id.* Motley later claimed at trial that "what they were about to do" referred to retaining a lawyer for Brownlee. *Id.*

{¶ 7} Meanwhile, McFarland and Motley sold drugs to raise money to post Brownlee's bond. McFarland posted Brownlee's bond on November 10, 2015, and he was released from the county jail. Thereafter, Brownlee again told Motley he believed Williams was a snitch and instructed Motley to physically harm Williams.

Brownlee also called Williams and threatened that he (Williams) and Henderson were going to "see their graves." *Id*. at ¶ 8.

{¶ 8} The trial testimony showed that on November 14, 2015, Motley, his brother, and a friend, not McFarland, drove to the Indian Hills Apartments and waited in the second-floor stairwell. When they heard Williams leave his apartment, Motley ran toward Williams and shot him the chest. Motley and the others immediately fled the scene, and Motley disposed of the gun. Henderson heard the gunshot and called the police. Henderson told police that she and Williams had been receiving threats from Brownlee and McFarland. Henderson knew McFarland because Williams bought cocaine from Brownlee.

{¶ 9} Motley testified against McFarland at trial. He stated that he was a drug dealer in the Indian Hills Apartments area and that Brownlee was one of his suppliers. He admitted that he went to Brownlee and McFarland's hotel room, where he retrieved the gun that he later used to shoot Williams. McFarland argued in defense at trial that she was not present during the murder and that there was no evidence that she participated in a conspiracy to murder Williams. (Trial tr. 730-738.) The jury nevertheless found her guilty.

{¶ 10} McFarland appealed her convictions, arguing, among other things, that there was insufficient evidence to sustain her convictions because she was not present during the murder and there was no evidence of any overt acts required to support a conspiracy charge. *See McFarland*, 8th Dist. Cuyahoga No. 105570, 2018-Ohio-2067. This court affirmed McFarland's convictions but remanded the case to

the trial court to merge allied offenses of similar import. *Id.* McFarland appealed this court's decision to the Ohio Supreme Court, which affirmed this court's decision and found sufficient evidence to sustain her convictions. *See State v. McFarland*, 162 Ohio St.3d 36, 2020-Ohio-3343, 164 N.E.3d 316.

{¶ 11} On remand but before resentencing, McFarland filed, under seal,[1] a motion for leave to file a motion for a new trial pursuant to Crim.R. 33(A)(6). She argued that after receiving psychiatric treatment in prison, she discovered that she had been misdiagnosed while in the county jail, had not been given the appropriate medication for her mental illness, and that, as a result, she was not competent to stand trial at the time of trial. She also argued that she had a low IQ and a history of childhood abuse that prevented her from being able to assist in her own defense.

{¶ 12} The trial court resentenced McFarland in accordance with this court's mandate and sentenced her to 20 years to life in prison plus three years on an attendant firearm specification for an aggregate 23 years to life in prison. This time, the court did not impose any fines. In the court's sentencing entry, the court denied McFarland's motion for leave to file a motion for new trial "as moot." McFarland now appeals the denial of her motion for leave to file a motion for new trial.

---

[1] McFarland's motion for leave to file a motion for new trial was filed under seal because it contained confidential medical records, school records, and a presentence-investigation report from a prior case. However, the parties have not filed their appellate briefs under seal and they reference items submitted as exhibits to the motion for leave. Under these circumstances, we find it appropriate to reference portions of the record cited in the parties' briefs to the extent it is necessary to resolve the arguments presented in this appeal.

## II. Law and Analysis

### A. Standard of Review

{¶ 13} McFarland filed her motion for leave to file a motion for new trial pursuant to Crim.R. 33(A)(6). Crim.R. 33(A)(6) provides that a new trial may be granted "when new evidence material to the defense is discovered, which the defendant could not with reasonable diligence have discovered and produced at the trial." Crim.R. 33(A)(6); *State v. Apanovitch*, 8th Dist. Cuyahoga No. 108924, 2020-Ohio-4217, ¶ 15.

{¶ 14} Crim.R. 33(B) provides that a motion for new trial based on newly discovered evidence must be filed within 120 days after a verdict is rendered. A party who fails to file a motion for new trial within that time must seek leave from the trial court to file a delayed motion for new trial. *State v. Hale*, 8th Dist. Cuyahoga No. 107782, 2019-Ohio-1890, ¶ 9. The trial court may grant leave to file a delayed motion for new trial if the movant shows, by clear and convincing evidence, that he or she was unavoidably prevented from filing the motion for a new trial within the 120 days of the trial verdict, and he or she sought leave to file the motion for new trial within a reasonable time after discovering the evidence. *Id*. at ¶ 9-10.

{¶ 15} "Clear and convincing evidence is that measure or degree of proof * * * which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶ 16} "'[A] party is unavoidably prevented from filing a motion for new trial if the party had no knowledge of the existence of the ground supporting the motion for new trial and could not have learned of the existence of that ground within the time prescribed for filing the motion for new trial in the exercise of reasonable diligence.'" *Apanovitch* at ¶ 15, quoting *State v. Walden*, 19 Ohio App.3d 141, 483 N.E.2d 859 (10th Dist.1984).

{¶ 17} The defendant bears the burden of demonstrating, by clear and convincing evidence, that he or she was unavoidably prevented from filing his or her motion within the time prescribed. *State v. Hubbard*, 8th Dist. Cuyahoga No. 108853, 2020-Ohio-2726, ¶ 29. To meet this burden, the defendant must present "'more than a mere allegation that he [or she] was unavoidably prevented from discovering the evidence he [or she] seeks to introduce to support a new trial.'" *Id.*, quoting *State v. Cowan*, 8th Dist. Cuyahoga No. 108394, 2020-Ohio-666, ¶ 10.

{¶ 18} Crim.R. 33 does not provide a specific time limit in which defendants must file a motion for leave to file a delayed motion for new trial, but Ohio courts have held that a defendant must file his or her motion for leave within a reasonable time after he or she discovers the evidence. *Apanovitch* at ¶ 16. "The determination of whether a delay is reasonable is based on the facts and circumstances of the case and whether the defendant presents an adequate explanation for the delay in filing his or her motion for leave." *Hubbard* at ¶ 30.

{¶ 19} "When a defendant seeks leave to file a motion for a new trial under Crim.R. 33(B), the trial court may not consider the merits of the proposed motion

for a new trial until after it grants the motion for leave." *State v. Hatton*, Slip Opinion No. 2022-Ohio-3991, ¶ 30, citing *State v. Bethel*, 167 Ohio St.3d 362, 2022-Ohio-783, 192 N.E.3d 470, ¶ 41. "The sole question before the trial court when considering whether to grant leave is whether the defendant has established by clear and convincing proof that he was unavoidably prevented from discovering the evidence on which he seeks to base the motion for a new trial." *Id.*

{¶ 20} A trial court's decision on a Crim.R. 33 motion for a new trial will not be reversed absent an abuse of discretion. *State v. Sutton*, 2016-Ohio-7612, 73 N.E.3d 981, ¶ 13 (8th Dist.). We also review the decision on whether to hold a hearing on the motion for new trial for an abuse of discretion. *Id.* at ¶ 24. An abuse of discretion occurs when a court exercises its judgment in an unwarranted way regarding a matter over which it has discretionary authority. *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 35. In other words, "[a] court abuses its discretion when a legal rule entrusts a decision to a judge's discretion and the judge's exercise of that discretion is outside of the legally permissible range of choices." *State v. Hackett*, 164 Ohio St.3d 74, 2020-Ohio-6699, 172 N.E.3d 75, ¶ 19.

{¶ 21} This court has held that an abuse of discretion may be found where a trial court "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, 892 N.E.2d 454, ¶ 15 (8th Dist.). When applying the abuse of discretion standard, a reviewing court may not substitute its judgment for

that of the trial court. *Vannucci v. Schneider*, 2018-Ohio-1294, 110 N.E.3d 716, ¶ 22 (8th Dist.).

## B.  Unavoidably Prevented

{¶ 22} McFarland was required to seek leave of the trial court to file a motion for new trial because she filed the motion more than 120 days after the jury rendered its verdict.  In order to obtain leave, McFarland had to demonstrate, by clear and convincing evidence, that she was unavoidably prevented from discovering information material to her defense that she could not, with reasonable diligence, have discovered and produced at the time of trial.  Crim.R. 33(A)(6).

{¶ 23} In her motion for leave, McFarland argued that she was unavoidably prevented from discovering how her mental illness impaired her ability to assist in her defense due to a misdiagnosed mental illness.  In support of this claim, McFarland submitted (1) copies of her medical records from the county jail from the time of her arrest to the time of trial; (2) copies of her school records from the Cleveland Metropolitan School District from 1972 to 1978; (3) copies of her medical records from the Ohio Department of Rehabilitation and Correction, Dayton Correctional Institution, from 2017 to 2018; (4) a journal article regarding the impact of childhood trauma on the cognitive function of individuals with bipolar disorder; (5) a presentence-investigation report from a 2002 Cuyahoga County case; (6) records from the Mississippi Department of Child Protective Services pertaining to McFarland when she was a child; (7) records from the Center for Families and Children and Circle Health Services Medical Records from 2012 to 2014; and (8) a

journal article regarding the use of antidepressants in the treatment of adults with bipolar major depression.

{¶ 24} There is no evidence in the record demonstrating that McFarland was unavoidably prevented from obtaining her own medical records, presentence-investigation report from her own prior case, or her own school records. And, although the medical records from 2017 to 2018 indicate that McFarland was prescribed different medications in the Dayton Correctional Institution from those prescribed to her while she was in the county jail awaiting trial, there is no evidence in the records, expert or otherwise, demonstrating that she was misdiagnosed prior to trial or that she was not competent to stand trial. Indeed, the journal article regarding the use of antidepressants in the treatment of bipolar major depression states that "antidepressants * * * are the most commonly prescribed drugs for bipolar depression." (Motion for leave to file motion for new trial, exhibit B., p.1.) McFarland was given an antidepressant to treat her illness while she was in the county jail.

{¶ 25} The evidence submitted in support of the motion for leave demonstrates that McFarland had a history of mental-health issues and treatment, long before trial. The 2002 presentence-investigation report states, in relevant part:

> According to the offender[,] she is in good health at the present time [and] does not take prescription medications. She is not currently under a doctor's care, but has received mental health treatment. The offender indicates that she received an evaluation for depression on 4-19-02 by Dr. P. White of University Hospitals located at E. 185th and Lakeshore Avenue. Additionally, in 1985 she spent three days at the Cleveland Psychiatric Institute, has been hospitalized at Meridia

> Hospital in Warrensville Hts. for one day, as well as Charity Hospital during an unknown year. * * * According to institutional records, on 6-5-85 during an intake screening evaluation at the Ohio State Reformatory for Women by S. Bin Yun, M.D., Department of Psychological Services, the offender was administered the MMPI, as well as the revised Beta II tests, indicating that she was functioning at the lower limits of below average level of non-verbal intelligence. Further, these test results indicate that her "defense system is rather weak yielding considerable emotional vulnerability and subsequent feelings of anxiety and depression under pressure." On 6-14-88, a second intake screening evaluation was completed and it was stated that "she could best be described as a psychopathic personality at this time." Test results "suggest that she is non-conforming and resentful of authority figures. Her behaviors tend to be erratic and unpredictable, while having marked problems with impulse control. She also tends to be angry, irritable, and resentful, and tends to act out in anti-social ways."

(Motion for leave to file motion for new trial, exhibit D, p. 9.) Clearly, McFarland's mental illness and cognitive deficits are not new, and her records could have easily been obtained by trial counsel prior to trial. "A defendant cannot claim that evidence was undiscoverable merely because the defendant or his defense counsel made no effort to obtain the evidence sooner." *Hubbard*, 8th Dist. Cuyahoga No. 108853, 2020-Ohio-2726, at ¶ 56, citing *State v. Jackson*, 8th Dist. Cuyahoga No. 108241, 2019-Ohio-4893, ¶ 20.

{¶ 26} The records from the Dayton Correctional Institution indicate that she was diagnosed with schizoaffective disorder, bipolar type, while she was in the institution after trial. This new diagnosis does not necessarily mean she was previously misdiagnosed. And McFarland did not submit any affidavits, expert or otherwise, to substantiate such a claim. Moreover, there is also no evidence

whatsoever that McFarland was not competent to stand trial even if she had previously been misdiagnosed.

{¶ 27} McFarland was offered a plea prior to trial that would have subjected her to a five-year sentence. She rejected that offer, proceeded to trial, and was convicted of aggravated murder, which now subjects her to a 20 year-to-life prison sentence. The purpose of her motion for new trial is to ascertain why she rejected the plea offer. She asserts that she must have been incompetent to reject such a plea and risk a life sentence. However, McFarland maintained her innocence at trial and presented the defense that there was no evidence that she participated in the conspiracy to murder Williams. Such a defense was not unreasonable since she was not present at the scene of the murder, and Motley admitted that he murdered Williams at Brownlee's direction. The fact that McFarland rejected the plea does not, by itself, establish that McFarland was not competent to stand trial under these circumstances.

{¶ 28} A criminal defendant is only entitled to a hearing on a motion for leave to file a motion for a new trial if he or she submits documents which, *on their face*, support his or her claim that he or she was unavoidably prevented from timely discovering the evidence at issue. *State v. Dues*, 8th Dist. Cuyahoga No. 105388, 2017-Ohio-6983, ¶12, citing *State v. McConnell*, 170 Ohio App.3d 800, 2007-Ohio-1181, ¶ 7, 869 N.E.2d 77 (2d Dist.). "Mere conclusory allegations do not prove that the defendant was unavoidably prevented from discovering the evidence he seeks to introduce as support for a new trial." *State v. Cashin*, 10th Dist. Franklin No. 17AP-

338, 2017-Ohio-9289, ¶ 17; see also *State v. Miller*, 8th Dist. Cuyahoga No. 110571, 2022-Ohio-378, ¶ 14 (same.).

{¶ 29} McFarland failed to present evidence that, on its face, would support her claim that she was unavoidably prevented from discovering that she was misdiagnosed prior to trial and that improper treatment based on the misdiagnosis impaired her ability to engage in her own defense. The fact that she had a mental illness and cognitive deficits was known prior to trial. She, therefore, cannot meet her burden of establishing, by clear and convincing evidence, that she was unavoidably prevented from obtaining information regarding her mental-health condition prior trial had she and her trial counsel exercised reasonable diligence.

{¶ 30} The sole assignment of error is overruled.

{¶ 31} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, JUDGE

SEAN C. GALLAGHER, A.J., and
MARY EILEEN KILBANE, J., CONCUR