[Cite as *State v. McFarland*, 2025-Ohio-5850.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO, :

    Plaintiff-Appellee, :

                             No. 114733

v. :

SHELIA A. MCFARLAND, :

    Defendant-Appellant. :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 31, 2025

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-16-604052-B

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Daniel T. Van and Sarah Hutnik, Assistant Prosecuting Attorneys, *for appellee.*

Law Office of Timothy Farrell Sweeney and Timothy F. Sweeney, *for appellant.*

EILEEN T. GALLAGHER, J.:

{¶ 1} Defendant-appellant Shelia A. McFarland ("McFarland") appeals the denial of her motion for leave to file a motion for new trial based on newly discovered evidence pursuant to Crim.R. 33(B). She claims the following errors:

1. The trial court violated the party presentation principle, and abused its discretion, when it invoked "res judicata" to deny McFarland's motion for leave when the State did not argue "res judicata."

2. The trial court committed an error of law and denied McFarland's substantive rights when it applied the doctrine of res judicata and/or law of the case to deny McFarland's supplemental and updated motion for leave to file a motion for new trial, in circumstances where her motion satisfied the requirements of Crim.R. 33(B) or, at the very least, she was entitled to an evidentiary hearing.

3. The trial court abused its discretion when it denied McFarland's supplemental and updated motion for leave to file a motion for new trial and in failing to at least grant her an evidentiary hearing on the motion for leave.

We find that although McFarland presented a new expert report, the report was based on information that was available to her prior to and during the trial. Therefore, McFarland was not unavoidably prevented from discovering the evidence in a timely manner, and we affirm the trial court's judgment.

## I. Facts and Procedural History

{¶ 2} In March 2016, McFarland was charged, together with codefendants Ryan Motley ("Motley"), Eddie Brownlee ("Brownlee"), Raymond Motley, and Rahkee Young, with two counts of aggravated murder, two counts of murder, two counts of felonious assault, two counts of aggravated burglary, one count of conspiracy and one count of kidnapping in connection with the shooting death of R.W. in November 2015. A jury found McFarland guilty of all ten counts in the indictment, and the court sentenced her to an aggregate prison term of life without the possibility of parole. *See State v. McFarland*, 2018-Ohio-2067 (8th Dist.).

{¶ 3} At trial, the State presented evidence indicating that R.W. was living in the Indian Hills Apartments in Euclid, Ohio with his girlfriend, K.H., at the time of his death. Two months earlier, in September 2015, Euclid narcotics detectives conducted a series of controlled drug buys from R.W. in the parking lots surrounding the Indian Hills Apartments. As a result of the buys, the narcotics detectives obtained and executed a search warrant for R.W.'s apartment where they discovered crack cocaine. Both R.W. and K.H. were arrested and subsequently agreed to become confidential informants to assist Euclid detectives in apprehending their supplier, Brownlee, and his girlfriend, McFarland.

{¶ 4} R.W. conducted three controlled drug buys from Brownlee and McFarland. Brownlee and McFarland were arrested during the third buy on October 22, 2015, and they were both charged with drug offenses. McFarland was released from jail on October 23, 2015, but Brownlee remained in jail.

{¶ 5} While incarcerated on the pending drug charges, Brownlee made several recorded phone calls to McFarland, who was using Brownlee's cell phone. During one of the calls, Brownlee told McFarland, who was then in the presence of codefendant Motley, that he suspected R.W. was an informant and that he had "snitched" on him and set up the controlled buys. Following the call, Motley went to a hotel room, where Brownlee and McFarland had been staying, and removed drugs to avoid further charges. While they were there, Motley recovered a firearm from under a mattress and removed it from the room. When Motley informed Brownlee that he had retrieved the gun, Brownlee told Motley to "Get Rob. Get those

mother. . .ckers." *McFarland*, 2018-Ohio-2067, at ¶ 6. Brownlee also told Motley, "I need you to handle this." *Id.* McFarland replied that she and Motley were "about to do that one thing now." *Id.* Motley later claimed at trial that "what they were about to do" referred to retaining a lawyer for Brownlee. *Id.*

{¶ 6} Meanwhile, McFarland and Motley sold drugs to raise money to post Brownlee's bond. McFarland posted Brownlee's bond on November 10, 2015, and he was released from the county jail. Thereafter, Brownlee again told Motley he believed R.W. was a snitch and instructed Motley to physically harm R.W. Brownlee also called R.W. and threatened that he (R.W.) and K.H were going to "see their graves." *Id.* at ¶ 8.

{¶ 7} The trial testimony showed that on November 14, 2015, Motley, his brother, and a friend, not McFarland, drove to the Indian Hills Apartments and waited in the second-floor stairwell. When they heard R.W. leave his apartment, Motley ran toward R.W. and shot him in the chest. Motley and the others immediately fled the scene, and Motley disposed of the gun. K.H. heard the gunshot and called the police. K.H. told police that she and R.W. had been receiving threats from Brownlee and McFarland. K.H. knew McFarland because R.W. bought cocaine from Brownlee.

{¶ 8} Motley testified against McFarland at trial. He stated that he was a drug dealer in the Indian Hills Apartments area and that Brownlee was one of his suppliers. He admitted that he went to Brownlee and McFarland's hotel room, where he retrieved the gun that he later used to shoot R.W. McFarland argued in

defense at trial that she was not present during the murder and that there was no evidence that she participated in a conspiracy to murder R.W. (Trial tr. 730-738.) The jury nevertheless found her guilty as an accomplice.

{¶ 9} McFarland appealed her convictions, arguing, among other things, that there was insufficient evidence to sustain her convictions because she was not present during the murder and there was no evidence of any overt acts required to support a conspiracy charge. *McFarland*, 2018-Ohio-2067, at ¶ 29-35. This court affirmed McFarland's convictions but remanded the case to the trial court to merge allied offenses of similar import. *Id.* at ¶ 67. The Ohio Supreme Court affirmed this court's decision and found sufficient evidence to sustain her convictions. *See State v. McFarland*, 2020-Ohio-3343.

{¶ 10} On remand but before resentencing, McFarland filed a motion for leave to file a motion for a new trial pursuant to Crim.R. 33(A)(6). She argued that after receiving psychiatric treatment in prison, she discovered that she had been misdiagnosed in the county jail while awaiting trial, that she had not been given the appropriate medication for her mental illness, and that, as a result, she was not competent to stand trial at the time of trial. She also argued that she had a low IQ and a history of childhood abuse that prevented her from being able to assist in her own defense.

{¶ 11} The trial court resentenced McFarland in accordance with this court's mandate and sentenced her to 20 years to life in prison plus three years on an attendant firearm specification for an aggregate 23 years to life in prison. In the

court's sentencing entry, the court denied McFarland's motion for leave to file a motion for new trial "as moot."

{¶ 12} McFarland appealed, and we affirmed the denial on grounds that McFarland failed to demonstrate by clear and convincing evidence that she was unavoidably prevented from discovering material information about her mental-health condition. *State v. McFarland*, 2022-Ohio-4638, ¶ 25 (8th Dist.). We noted that her mental-health history, which included prior psychiatric evaluations, hospitalizations, and diagnoses dating back to 1985, was readily available and could have been obtained from her trial counsel with reasonable diligence. We also held that a subsequent diagnosis of schizoaffective disorder after sentencing did not prove that McFarland was previously misdiagnosed. *Id.* at ¶ 26. Finally, we noted that McFarland's rejection of a five-year plea offer in favor of maintaining her innocence was reasonable given that she was not present at the scene of the murder and that Motley admitted he murdered R.W. at Brownlee's direction. *Id.* at ¶ 27. The Ohio Supreme Court declined to accept jurisdiction of an appeal by McFarland. *See State v. McFarland*, 2023-Ohio-3444.

{¶ 13} Following the Supreme Court's denial of jurisdiction, McFarland filed a motion for a nunc pro tunc judgment entry asking the trial court to correct its March 3, 2022 journal entry to reflect that McFarland's motion for leave to file a delayed motion for new trial remained pending and had not yet been ruled upon. As previously stated, the trial court had overruled the motion as moot when it resentenced McFarland following her direct appeal. The trial court granted the

motion and issued a nunc pro tunc judgment entry indicating that McFarland's motion for leave to file a motion for new trial remained pending.

{¶ 14} Thereafter, McFarland filed a supplement to her motion for leave to file a motion for new trial that included an expert report from Dr. Stephen Noffsinger, a professor of psychiatry at Case Western Reserve University and University Hospitals Cleveland Medical Center. The State filed a supplemental brief in opposition to McFarland's motion, and the trial court ultimately denied it on grounds that it was barred by res judicata.

{¶ 15} In its judgment entry, the trial court observed that it had previously denied the motion for leave to file a motion for new trial as moot, and McFarland appealed that ruling, asserting in her sole assignment of error that "[t]he trial court committed reversible error and prejudiced appellant when it denied appellant's motion for leave to file motion for new trial." Her appeal did not mention the summary nature of the motion's denial as moot. This court addressed the merits of McFarland's motion for leave to file a motion for new trial and affirmed its denial. *McFarland*, 2022-Ohio-4638, at ¶ 29. Thus, in finding that McFarland's motion was barred by res judicata, the trial court concluded that because McFarland had previously appealed the trial court's denial of her motion and the appellate court affirmed the denial, the issues raised in the motion had already been adjudicated and could not be relitigated. The court emphasized that McFarland accepted the trial court's denial of her motion as a final, appealable order by filing the appeal and that her appeal of the ruling precluded any renewed consideration of the motion

despite the subsequent issuance of the nunc pro tunc judgment entry stating that the motion was not properly denied as moot.

{¶ 16} McFarland now appeals the trial court's judgment again denying her motion for leave to file a motion for new trial.

## II. Law and Analysis

### A. Party-Presentation Principle

{¶ 17} In the first assignment of error, McFarland argues the trial court erred in overruling her motion for leave to file a motion for new trial on the basis of res judicata because the State did not raise the issue of res judicata and the issue of res judicata was not briefed by the parties. She contends the trial court's decision to overrule her motion on the basis of res judicata violated the party-presentation principle.

{¶ 18} The party-presentation principle is a doctrine of judicial restraint requiring that the parties, not the judge, determine the issues to be decided in the case. Jeffrey M. Anderson, *ARTICLE: The Principle of Party Presentation*, 70 Buffalo L. Rev. 1029, 1039 (2022); *see also Epcon Communities Franchising, L.L.C. v. Wilcox Dev. Group*, 2024-Ohio-4989, ¶ 15, quoting *Greenlaw v. United States*, 554 U.S. 237, 243 (2008) ("Under this principle, 'we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present.'").

{¶ 19} In *Epcon*, a developer of community-development housing projects sued a franchisee to recover funds it paid to resolve violations of the Fair Housing

Act that it claimed were caused by the franchisee. The franchisee filed a motion to dismiss the complaint, arguing that no claim for contribution was available under Ohio law because Epcon did not allege the commission of a tort and because Epcon had not alleged a "single individual injury." *Id.* at ¶ 8. The franchisee also argued there was no right of contribution under the Fair Housing Act. The trial court granted the franchisee's motion to dismiss, but not for the reasons it argued therein. Instead, the trial court dismissed the complaint on grounds that the Fair Housing Act preempts a claim for contribution under R.C. 2307.25(A). The trial court's judgment was based on preemption principles, an argument that was never raised by the franchisee. *Id.* at ¶ 10.

{¶ 20} The Ohio Supreme Court reversed the trial court's judgment, in part, because it violated the party-presentation principle. *Id.* at ¶ 17-22. The Court also determined that the trial court's judgment "ran afoul" of the constitutional-avoidance principle and the restrictions on answering hypothetical questions. Nevertheless, the Court found that all three considerations, namely the party-presentation principle, constitutional avoidance, and the restrictions on answering hypothetical questions led the Court to the same conclusion requiring reversal of the trial court's judgment. *Id.* at ¶ 22.

{¶ 21} Neither party asked the trial court to apply the doctrine of res judicata as a basis for denying McFarland's motion for leave to file a motion for new trial. Had the State raised the issue, McFarland would have had an opportunity to present a counterargument. Although the trial court did not afford the parties an

opportunity to brief the issue of res judicata, it nevertheless ruled on that basis and deprived McFarland of the opportunity to argue against its application. The party-presentation principle reflects the view that courts function as neutral arbiters and, therefore, should not act as advocates for either party or for any particular result. *United States v. Samuels*, 808 F.2d 1298, 1299 (8th Cir.1987) (Arnold, J., concurring) (Courts "have enough work to do without assuming an activist role and becoming advocates.").

{¶ 22} The trial court ruled in favor of the State on grounds that were not raised by either party and thereby violated the party-presentation principle. Therefore, the first assignment of error is sustained.

## B. Unavoidably Prevented

{¶ 23} In the second assignment of error, McFarland argues the trial court erred in denying her motion for leave to file a motion for new trial because she demonstrated that she met the requirements of Crim.R. 33(B). In the third assignment of error, she argues the trial court abused its discretion in denying her motion when she met the requirements of Crim.R. 33(B). We discuss these assigned errors together because they are interrelated.

### 1. Standard of Review

{¶ 24} We review a motion for leave to file a motion for new trial for an abuse of discretion. *State v. Johnson*, 2022-Ohio-523, ¶ 32 (8th Dist.), citing *State v. Hill*, 2020-Ohio-102, ¶ 13 (8th Dist.). We also review a trial court's decision on whether

to hold a hearing on the motion for an abuse of discretion. *State v. Phillips*, 2017-Ohio-7164, ¶ 21 (8th Dist.), citing *State v. Sutton*, 2016-Ohio-7612, ¶ 13 (8th Dist.).

{¶ 25} An abuse of discretion occurs when a court exercises its judgment in an unwarranted way regarding a matter over which it has discretionary authority. *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35. However, "a trial 'court does not have discretion to misapply the law.'" *Morgan v. Greater Cleveland Regional Transit Auth.*, 2025-Ohio-1655, ¶ 64 (8th Dist.), quoting *Johnson* at ¶ 38. "Thus, an abuse of discretion also occurs when a court '"applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact."'" *Id.*, quoting *Thomas v. Cleveland*, 2008-Ohio-1720, ¶ 15 (8th Dist.), quoting *Berger v. Mayfield*, 265 F.3d 399 (6th Cir. 2001).

{¶ 26} McFarland filed her motion for leave to file a motion for new trial pursuant to Crim.R. 33. Crim.R. 33(A)(6) provides that a new trial may be granted upon motion of the defendant

> [w]hen new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial. When a motion for a new trial is made upon the ground of newly discovered evidence, the defendant must produce at the hearing on the motion, in support thereof, the affidavits of the witnesses by whom such evidence is expected to be given, and if time is required by the defendant to procure such affidavits, the court may postpone the hearing of the motion for such length of time as is reasonable under all the circumstances of the case. The prosecuting attorney may produce affidavits or other evidence to impeach the affidavits of such witnesses.

{¶ 27} Crim.R. 33(B) provides that when a defendant wishes to file a motion for new trial based on newly discovered evidence identified more than 120 days after

a verdict is rendered, the defendant must first seek leave from the trial court to file a delayed motion. *State v. Hale*, 2019-Ohio-1890, ¶ 9 (8th Dist.). The trial court may grant leave to file a delayed motion for new trial if the movant shows, by clear and convincing evidence, that he or she was unavoidably prevented from filing the motion for a new trial within the 120 days of the trial verdict. *State v. Tucker*, 2025-Ohio-923, ¶ 17 (8th Dist.) ("To obtain leave, the defendant must clearly and convincingly demonstrate that they were unavoidably prevented from timely filing their motion for a new trial.").[1]

{¶ 28} "Clear and convincing evidence is that measure or degree of proof . . . which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶ 29} The defendant bears the burden of demonstrating, by clear and convincing evidence, that he or she was unavoidably prevented from filing his or her motion within the 120-day period provided in Crim.R. 33(B). *State v. Hubbard*, 2020-Ohio-2726, ¶ 29 (8th Dist.). To meet this burden, the defendant must present "'more than a mere allegation that he [or she] was unavoidably prevented from discovering the evidence he [or she] seeks to introduce to support a new trial.'" *Id.*, quoting *State v. Cowan*, 2020-Ohio-666, ¶ 10 (8th Dist.). "A defendant is entitled

---

[1] In *State v. Bethel*, 2022-Ohio-783, ¶ 55, the Ohio Supreme Court held that because Crim.R. 33(B) does not establish a time frame by which a defendant must seek leave to file a motion for new trial after discovering new evidence, it rejected the imposition of a reasonable-time filing requirement.

to a hearing on his or her motion for leave to file a motion for new trial only if the submitted documents demonstrate that the defendant was unavoidably prevented from timely discovering the grounds for the motion." *Tucker*, 2025-Ohio-923, at ¶ 18 (8th Dist.), citing *State v. Allen*, 2024-Ohio-970, ¶ 21 (8th Dist.).

{¶ 30} A defendant can establish that he or she was "unavoidably prevented" from filing a timely motion for a new trial based on newly discovered evidence by demonstrating that he or she was previously unaware of the evidence on which the motion relies and that he or she could not, in the exercise of reasonable diligence, have discovered the evidence within the required time period. *Tucker*, 2025-Ohio-923, at ¶ 19 (8th Dist.), citing *Allen* at ¶ 26.

{¶ 31} "When a defendant seeks leave to file a motion for a new trial under Crim.R. 33(B), the trial court may not consider the merits of the proposed motion for a new trial until after it grants the motion for leave." *State v. Hatton*, 2022-Ohio-3991, ¶ 30, citing *Bethel*, 2022-Ohio-783, at ¶ 41. "The sole question before the trial court when considering whether to grant leave is whether the defendant has established by clear and convincing proof that he was unavoidably prevented from discovering the evidence on which he seeks to base the motion for a new trial." *Id*. Further, "[a] defendant cannot claim that evidence was undiscoverable merely because the defendant or his defense counsel made no effort to obtain the evidence sooner." *Hubbard*, 2020-Ohio-2726, at ¶ 56 (8th Dist.).

## 2. New Expert Report

{¶ 32} McFarland argues the trial court erred in denying her motion for leave to file a motion for new trial in light of Dr. Noffsinger's psychiatric report, which was not available within 120 days from the conclusion of the trial. She contends this new expert report demonstrates that she was mentally ill and suffered from a mild intellectual disability at the time of trial, that the effect of these conditions impaired her ability to assist in her defense, and that this psychiatric evidence could not have been discovered earlier. She relies on *Hatton*, 2022-Ohio-3991, and *Bethel*, 2022-Ohio-783, to support her argument.

{¶ 33} In *Hatton*, the defendant, Hatton, was convicted of multiple offenses, including rape in 1997. During the trial, the State's DNA expert, Ramon Tejwani ("Tejwani"), testified that the male fractions from the victim's vaginal swabs and underwear could not provide information regarding the contributors because they were mixed samples that could "neither exclude nor include anybody" as contributors of the samples. *Id.* at ¶ 10. In other words, Tejwani stated that the DNA test results were inconclusive. *Id.* at ¶ 10.

{¶ 34} Hatton's defense expert reviewed Tejwani's notes, which were produced for the first time during trial, and testified to the presence of a B allele in the mixed sample of male DNA fractions. Hatton's expert testified that the presence of the B allele was significant because it could not have come from Hatton, his codefendant, or the victim's father "all of whom had only A alleles at that genetic marker." *Hatton*, 2022-Ohio-3991, at ¶ 12. The State did not offer rebuttal evidence

nor did it suggest an alternative source for the additional DNA. The prosecutor ignored evidence of the B allele and instead impeached the defense expert's credentials. Hatton was ultimately convicted and sentenced to 39 years in prison. Throughout the proceedings, Hatton maintained his innocence. *Id*. at ¶ 1.

**{¶ 35}** In 2018, more than 20 years after his convictions, Hatton discovered through a public-records request that Tejwani, the DNA expert who testified at his trial, created a memorandum in 1998, while Hatton's direct appeal and a petition for postconviction relief were pending. Tejwani acknowledged in the 1998 memo that the DNA samples included DNA from more than one male contributor. More importantly, Tejwani stated that the "'[t]he male fraction of the vaginal swabs consisted of a mixed DNA sample and no information regarding the contributor could be obtained from the DNA type results which were reported as "inconclusive" in the Lab Report.'" *Id*. at ¶ 16, quoting Tejwani's 1998 memo. Moreover,

> Tejwani implicitly informed the prosecutor that Hatton's attorney was asking about an element of the DNA test results that she had not included in the lab report or testified about at trial, and she also acknowledged that neither Hatton nor Dunn could have contributed the B allele that was found in the mixed samples, because a B allele was "not observed in the known blood samples." The memo was the first and only acknowledgment in the record by a *[S]tate*'s witness that the B allele indicated that someone other than Hatton or Dunn had contributed to the male DNA in the mixed samples. The prosecutor did not disclose the Tejwani memo to Hatton's trial, appellate, or postconviction counsel. And Hatton did not learn of its existence for more than 20 years.

(Emphasis in original.) *Id*. at ¶ 17.

**{¶ 36}** In 2019, Hatton filed a motion for leave to file a motion for new trial and a petition for postconviction relief, arguing that Tejwani's post-trial memo contradicted his trial testimony that the DNA test results were inconclusive. He also argued that the 1998 memo "demonstrated that the test result excluded him as a contributor to the mixed samples." *Id.* at ¶ 18. Finally, he argued that the 1998 memo was exculpatory and that the State's failure to disclose it violated Hatton's right to a fair trial. He preemptively asserted that res judicata should not apply because the memo had not been "'subject to inclusion or review at any level.'" *Id.* at ¶ 18, quoting Hatton's brief.

**{¶ 37}** The trial court summarily overruled Hatton's motions without a hearing on grounds that the 1998 memo was not newly discovered evidence since the issue of DNA had been previously litigated and because the motions were barred by res judicata. The Fourth District agreed that res judicata barred Hatton's requested relief and affirmed the trial court's judgment. *Hatton*, 2022-Ohio-3991, at ¶ 20.

**{¶ 38}** The Ohio Supreme Court reversed the Fourth District's decision and remanded the case to the trial court to grant Hatton's motion for leave to file a motion for new trial. In doing so, it found that the 1998 memo did more than merely restate the existence of the B allele and that the DNA test results were inconclusive. To the contrary, it found that because the DNA mixture was wholly contributed by two men, one of whom was Hatton's codefendant, then "Tejwani's acknowledgement of the B allele and its significance would mean that Hatton could

not have been the other contributor." Thus, because these new conclusions had not been previously litigated, they were not barred by res judicata. *Id.* at ¶ 22-25.

{¶ 39} Moreover, regarding the motion for leave to file a motion for new trial, the Court held that Hatton was unavoidably prevented from discovering the 1998 memo within the time period provided in Crim.R. 33(B) because Tejwani did not write it until after the statutory time had elapsed and because the State withheld it from Hatton "despite its relevance to argument in Hatton's then-pending direct appeal and petition for postconviction relief." *Id.* at ¶ 31. The Court noted that "'a defendant may satisfy the "unavoidably prevented" requirement contained in Crim.R. 33(B) by establishing that the prosecution suppressed the evidence on which the defendant would rely in seeking a new trial.'" *Id.* at ¶ 31, quoting *State v. McNeal*, 2022-Ohio-2703, ¶ 17.[2]

{¶ 40} In *Bethel*, 2022-Ohio-783, Bethel filed a successive petition for postconviction relief. As with a motion for new trial filed pursuant to Crim.R. 33(B), petitions filed under R.C. 2953.23(A)(1)(b) require the defendant to establish, among other things, that the defendant was unavoidably prevented from discovering the facts on which the claim relies in order for the trial court to have

---

[2] The Court further noted that the trial court had ignored Crim.R. 33(B)'s two-step process and the preliminary question as to whether Hatton had demonstrated that he was unavoidably prevented from discovering the evidence on which he seeks to rely. Instead, the court improperly jumped to considering the merits of a claim for new trial. *Id.* at ¶ 32. The Court declined to address whether Hatton's newly discovered evidence satisfied the standard for granting a new trial and limited its discussion to whether Hatton was unavoidably prevented from discovering the 1998 memo within the 120-day period provided in Crim.R. 33. *Id.* at ¶ 36.

subject-matter jurisdiction over the petition. *Id.* at ¶ 20. In reviewing the case, the *Bethel* Court noted that "'[t]he "unavoidably prevented" requirement in Crim.R. 33(B) mirrors the "unavoidably prevented" requirement in R.C. 2953.23(A)(1).'" *Id.* at ¶ 59, quoting *State v. Barnes*, 2018-Ohio-1585, ¶ 28 (5th Dist.).

{¶ 41} Bethel claimed the State violated *Brady v. Maryland*, 373 U.S. 83 (1963), by withholding an exculpatory investigation report. *Id.* at ¶ 2. Although a defendant ordinarily may not claim evidence was undiscoverable when no one made efforts to obtain the evidence sooner, the Court held that *Brady* violations are different because a defendant is entitled to rely on the prosecutor's duty to produce exculpatory evidence to the defense. As a result, a defendant asserting a *Brady* violation is not required to show that he could not have discovered the suppressed evidence by exercising reasonable diligence. *Id.* Thus, the Court held that "when a defendant asserts a *Brady* claim in an untimely or successive petition for postconviction relief, the defendant satisfies the 'unavoidably prevented' requirement contained in R.C. 2953.23(A)(1)(a) by establishing that the prosecution suppressed the evidence on which the defendant relies." *Id.* The *Bethel* Court nevertheless affirmed the dismissal of Bethel's petition because he failed to establish the remaining requirements for relief under R.C. 2953.23(A)(1)(b).

{¶ 42} *Bethel* and *Hatton* are distinguishable from the instant case in that the newly discovered evidence in those cases was not within the defendant's control; they were in the State's exclusive possession, and the State failed to comply with a duty to disclose exculpatory evidence to the defendants. By contrast, McFarland and

her defense team knew about McFarland's mental-health issues and mild cognitive impairments before trial. We, therefore, find this case more aligned with our recent decision in *State v. Jackson*, 2025-Ohio-2363 (8th Dist.).

{¶ 43} McFarland argues that she was suffering from a serious mental illness and cognitive impairments that forced her, through no fault of her own, into a state where she was not competent to stand trial or was not able to assist her lawyers in her defense. (Appellant's brief p. 26.) She contends she was misdiagnosed with major depression during her detention pending trial and that she was later diagnosed with schizoaffective disorder, which requires a different method of treatment. (Appellant's brief at p. 27.) In support of her motion for leave to file a motion for new trial, McFarland submitted the expert report of Dr. Noffsinger, who diagnosed her with schizoaffective disorder. He opined in the report that McFarland's schizoaffective disorder and mild intellectual disability "caused her to be unable to understand the nature and objective of the court proceedings and to be unable to assist in her defense."

{¶ 44} In *Jackson*, the defendant also had preexisting psychological challenges and substance-abuse issues prior to trial. Years later, he filed a petition for postconviction relief supported by reports from two new experts, who diagnosed him with schizoaffective disorder and polysubstance-abuse disorder. The experts opined that these conditions prevented Jackson from properly understanding the proceedings. Jackson argued he was unavoidably prevented from discovering his schizoaffective disorder and the effects of his drug abuse because his trial attorneys

failed to obtain psychiatric evaluations of his conditions at trial and in an earlier postconviction proceeding. He argued his diagnoses were discovered after the trial proceedings. *Id.* at ¶ 30. This court rejected Jackon's argument and concluded that his psychiatric conditions could have been discovered sooner because the facts on which the experts based their diagnoses were not new; they were present throughout the trial and postconviction proceedings. *Id.* at ¶ 32-36. This court held that "[t]he diagnosis and effects of substance abuse on his condition are therefore not newly discovered facts — they are simply additional information about facts that already existed throughout his case and have been thoroughly vetted." *Id.* at ¶ 33.

{¶ 45} The same is true here. In diagnosing McFarland, who was 57 years old, Dr. Noffsinger reviewed Cleveland Municipal School District records, Mississippi Department of Child Service Protection records from 1989, an Adult Parole Authority presentence-investigation report from 2002, Centers for Families and Children outpatient psychiatric records from October 2012 through July 2014, Cuyahoga County jail psychiatric records from December 2015 through June 2017, Ohio Department of Rehabilitation and Correction medical records from August 2017 through March 2021. In addition to these records, Dr. Noffsinger interviewed McFarland via Zoom on October 15, 2021, and in person on February 2, 2022. Although McFarland may have provided additional information in the interviews that was not included in the written records, her descriptions are not newly discovered facts — they are merely descriptions of facts that already existed prior to and during the trial. In the exercise of reasonable diligence, McFarland could have

been diagnosed with schizoaffective disorder prior to trial. As was the case in *Jackson*, it is difficult to see McFarland's new diagnosis as anything but an attempted second bite at the proverbial apple. *Jackson*, 2025-Ohio-2363, at ¶ 50 (8th Dist.). The new diagnosis does not constitute newly discovered evidence that would justify an order granting leave to file a motion for new trial, and the trial court acted within its discretion in denying McFarland's motion for leave to file a motion for new trial.

{¶ 46} As previously stated, a defendant is only entitled to a hearing on his or her motion for leave to file a motion for new trial "if the submitted documents demonstrate that the defendant was avoidably prevented from timely discovering the grounds for the motion." *Tucker*, 2025-Ohio-923, at ¶ 18. McFarland failed to produce evidence establishing grounds for a new trial based on newly discovered evidence. Dr. Noffsinger's report is based on evidence and information that was available prior to trial or, with the exercise of reasonable diligence, could have been discovered before trial. We, therefore, find no abuse of discretion in the trial court's decision to overrule McFarland's motion for leave to file a motion for new trial without a hearing. In accordance with our decision in *Jackson*, we overrule the second and third assignments of error.

{¶ 47} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, JUDGE

EILEEN A. GALLAGHER, A.J., and
LISA B. FORBES, J., CONCUR